34 U.S. 238 (____)
9 Pet. 238
THE UNITED STATES, PLAINTIFF
v.
JOHN BAILEY.
Supreme Court of United States.

*241 The case was argued by the Attorney-General, and Mr Loughborough, for the United States. No counsel appeared for the defendant.
*251 Mr Justice STORY delivered the opinion of the Court.
This is a criminal case, certified from the circuit court of the district of Kentucky upon a division of opinion of the judges of that court.
The defendant, John Bailey, was indicted for false swearing under the third section of the act of congress of the 1st day of March 1823, ch. 165, which provides "that if any person shall swear or affirm falsely touching the expenditure of public money, or in support of any claim against the United States, he or she shall, upon conviction thereof, suffer as for wilful and corrupt perjury." The indictment charges the false swearing to be in an affidavit made by the defendant, before a justice of the peace of the commonwealth of Kentucky, in support of a claim against the United States, under the act of congress of the 5th day of July 1832, ch. 173, to provide for liquidating and paying certain claims of the state of Virginia: and there are various counts in the indictment, stating the charge in different manners. It appears from the record, that at the trial "the attorney for the United States read in evidence the papers set out in the indictment, purporting to be the affidavit of the prisoner, with the certificates of the said Josiah Reed and William *252 Suddeth, and gave evidence to the jury, conducing to prove that the prisoner did, at the time and place charged in the indictment, take oath as charged, and subscribe the paper set out in the indictment as his affidavit, before the said Reed; and that the said Reed was then and there a justice of the peace of the commonwealth of Kentucky, in and for the said county of Bath, duly commissioned, qualified and acting as such; and also gave evidence conducing to prove, that immediately after the passage of the said act of congress of the 5th day of July 1832, entitled "an act for liquidating and paying certain claims of the state of Virginia," the secretary of the treasury did establish, as a regulation for the government of the department and its officers, in their action upon the claims in said act mentioned, that affidavits made and subscribed before any justice of the peace, of any of the states of the United States, would be received and considered, to prove the persons making claims under said act, or the deceased whom they represented, were the persons entitled under the provisions thereof, and that the said regulations had been ever since acted under at the department, and numerous claims heard, allowed and paid on such affidavits; and also gave evidence conducing to prove that the prisoner, acting as the executor of his father, John Bailey, had, before the time of making and subscribing said affidavit, asserted the claim therein mentioned, and employed Thomas Triplett to prosecute the same, and receive the money thereon; that the said Triplett did afterwards present the said affidavit and certificates, in support of said claim at the said department, on which, together with other affidavits, the same was allowed and the money paid, and a part thereof paid to the prisoner. The above being all the evidence conducing to prove the authority or jurisdiction of said Josiah Reed, to administer said oath and take said affidavit, the counsel for the prisoner moved the court to instruct the jury, that the said Josiah Reed had no authority or jurisdiction to administer said oath or take said affidavit; and that whatever other facts they might find on the evidence, the prisoner could not have committed the crime of perjury, denounced by the thirteenth section of the act of congress, more effectually to provide for the punishment of certain claims against the United States and for other purposes, "approved on the 3d of March 1825," nor of false swearing denounced *253 by the third section of the act "in addition to the act" entitled "an act for the prompt settlement of public accounts, and for the punishment of the crime of perjury," approved on the 1st of March 1823, and their verdict ought to be for the prisoner; which motion the attorney for the United States opposed.
On this question, the judges were divided and opposed in opinion, whereupon, on the motion of the attorney of the United States, the said question and disagreement were stated, and ordered to be certified to the supreme court.
It is admitted that there is no statute of the United States which expressly authorizes any justice of the peace of a state, or indeed any officer of the national government, judicial or otherwise, to administer an oath in support of any claim against the United States under the act of 1832, ch. 173. And the question is, whether, under these circumstances, the oath actually administered in this case was an oath upon which there would be a false swearing, within the true intent and meaning of the act of 1823, ch. 165.
It is unnecessary to consider in this case, whether an oath taken before a mere private or official person, not authorized to administer an oath generally, or in special cases, or not specially authorized, recognised or allowed by the regulations or practice of the treasury department, as competent to administer an oath, in support of any claim against the United States; would, though the claim should be admitted or acted upon in the treasury department, under such a supposed sanction, be within the provision of the act of 1823, ch. 165. These questions may well be reserved for consideration until they shall arise directly in judgment. In the present case, the oath was administered by a state magistrate, having an admitted authority under the state laws to administer oaths, virtute officii, in many cases, if not in the present case; and it is further found in the case, that there was evidence at the trial conducing to prove, (and for the purposes of the present argument it must be taken as proved) that the secretary of the treasury did establish a regulation, authorizing affidavits made before any justice of the peace, of a state, to be received and considered in proof of claims under the act of 1832; so that the solution of the question, now before us, depends upon this; whether the oath, so *254 administered under the sanction of the treasury department, is within the true intent and meaning of the act of 1823.
Admitting, for the sake of argument, that it is true (on which, however, we express no opinion) that a state magistrate is not compellable to administer an oath, virtue officii, under a law of the United States which expressly confers power on him for that purpose; still, if he should choose to administer an oath under such a law, there can be no doubt, that it would be a lawful oath, by one having competent authority; and as much so, as if he had been specially appointed a commissioner under a law of the United States, for that purpose. And we think, that such an oath administered under such circumstances, would clearly be within the provision of the act of 1823. That act does not create or punish the crime of perjury, technically considered. But it creates a new and substantive offence of false swearing, and punishes it in the same manner as perjury. The oath, therefore, need not be administered in a judicial proceeding, or in a case of which the state magistrate, under the state laws, had judicial jurisdiction, so as to make the false swearing perjury. It would be sufficient that it might be lawfully administered by the magistrate, and was not in violation of his official duty.
There being no express authority given by any law of the United States, to any state magistrate, to administer an oath in the present case, the next inquiry naturally presented is, whether the secretary of the treasury had an implied power to require, authorize, allow or admit any affidavits sworn before state magistrates, in proof or in support of any claim under the act of 1832; for if he had, it would be very difficult to show that such an affidavit is not within the true intent and meaning of the act of 1823, as it certainly is within the very words of the enactment. The policy of the act clearly extends to such a case; and the public mischief to be remedied is precisely the same, as if the affidavit had been taken under the express and direct authority of a statute of the United States.
And we are of opinion, that the secretary of the treasury did, by implication, possess the power to make such a regulation, and to allow such affidavits in proof of claims, under the act of 1832. It was incident to his duty and authority, in settling claims, under that act. The third section provides "that the *255 secretary of the treasury be, and he is hereby directed and required to adjust and settle those claims for half pay of the officers of the aforesaid regiment and corps, which have not been paid, &c.; which several sums of money herein directed to be settled or paid, shall be paid out of any money in the treasury not otherwise appropriated by law." It is a general principle of law, in the construction of all powers of this sort, that where the end is required, the appropriate means are given. It is the duty of the secretary to adjust and settle these claims, and in order to do so he must have authority to require suitable vouchers and evidence of the facts, which are to establish the claim. No one can well doubt the propriety of requiring the facts which are to support a claim, and rest on testimony, to be established under the sanction of an oath; and especially in cases of the nature of those which are referred to in the act, where the facts are so remote in point of time, and must be so various in point of force and bearing. It cannot be presumed that congress were insensible of these considerations, or intended to deprive the secretary of the treasury of the fullest use of the best means to accomplish the end, viz. to suppress frauds, and to ascertain, and allow just claims. It is certain, that the laws of the United States have, in various cases of a similar nature, from the earliest existence of the government down to the present time, required the proof of claims against the government to be by affidavit. In some of these laws authority has been given to judicial officers of the United States to administer the oaths for this purpose; and at least as early as 1818, a similar authority was confided to state magistrates. The citations from the laws, made at the argument, are direct to this point, and establish in the clearest manner a habit of legislation to this effect.[(a)] It may be added, that it has been stated by the attorney-general, and is of public notoriety, that there has been a constant practice and usage in the treasury department in claims against the United States, and especially of a nature like the present, to require evidence by affidavits in support of the claim, whether the same has been expressly *256 required by statute or not; and that, occasionally, general regulations have been adopted in the treasury department for this purpose.
Congress must be presumed to have legislated under this known state of the laws and usage of the treasury department. The very circumstance that the treasury department had, for a long period, required solemn verifications of claims against the United States, under oath, as an appropriate means to secure the government against frauds, without objection; is decisive to show that it was not deemed an usurpation of authority.
The language of the act of 1823 should, then, be construed with reference to this usage. The false swearing and false affirmation, referred to in the act, ought to be construed to include all cases of swearing and affirmation required by the practice of the department in regard to the expenditure of public money, or in support of any claims against the United States. The language of the act is sufficiently broad to include all such cases; and we can perceive no reason for excepting them from the words, as they are within the policy of the act, and the mischief to be remedied. The act does no more than change a common law offence into a statute offence.
There is nothing new in this doctrine. It is clear, by the common law, that the taking of a false oath, with a view to cheat the government, or to defeat the administration of public justice, though not taken within the realm, or wholly dependent upon usage and practice, is punishable as a misdemeanour. The case of O'Mealy v. Newell, 8 East's Rep. 364, affords an illustration of this doctrine. In that case it was held, that a person making, or knowingly using a false affidavit of debt, sworn before a foreign magistrate, in a foreign country, for the purpose of holding a party to bail in England; although such affidavit was not authorized by any statute, but was solely dependent upon the practice and usage of the courts of England; was punishable as a misdemeanour at the common law, as an attempt to pervert public justice. Upon this occasion Lord Ellenborough, after alluding to the practice of receiving such affidavits made in Ireland and Scotland, as well as in foreign countries, said, the practice in both cases must be equally warranted or unwarranted. In none of these cases *257 can the party making a false affidavit be indicted specifically for the crime of perjury, in the courts of this country. But in all of them, as far as he is punishable at all, he is punishable for a misdemeanour, in procuring the court to make an order to hold to bail, by means and upon the credit of a false and fraudulent voucher of a fact produced and published by him for that purpose. And the court held the practice perfectly justifiable.
Upon the whole, we are of opinion that where the oath is taken before a state or national magistrate, authorized to administer oaths, in pursuance of any regulations prescribed by the treasury department, or in conformity with the practice and usage of the treasury department, so that the affidavit would be admissible evidence at the department in support of any claim against the United States, and the party swears falsely, the case is within the purview of the act of 1823, ch. 165. It will be accordingly certified to the circuit court, that the said Josiah Reed, named in the certificate of division of the judges of the circuit court, being a justice of the peace of the commonwealth of Kentucky, authorized by the laws of that state to administer oaths, had authority and jurisdiction to administer the oath, and take the affidavit in the said certificate of division mentioned; and that if the facts stated therein were falsely sworn to, the case is within the act of congress of the 1st day of March 1823, referred to in the same certificate.
Mr Justice M'LEAN dissenting.
The question involved in this case is important, as it regards the construction of a highly penal law of the union; and of still greater importance, as it respects the powers of state officers under an act of congress which confers on them no special authority.
In the third section of the act of congress of the 1st of March 1823, it is provided, that "if any person shall swear or affirm falsely, touching the expenditure of public money, or in support of any claim of the United States, he or she shall, upon conviction thereof, suffer as for wilful and corrupt perjury." And in the thirteenth section of the act of the 3d of March 1825, it is declared, that "if any person, in any case, matter, hearing or *258 other proceeding, when an oath or affirmation shall be required to be taken or administered under or by any law or laws of the United States, shall, upon taking such oath or affirmation, knowingly and willingly swear or affirm falsely, every person so offending shall be deemed guilty of perjury, &c."
These are the acts under which the offence of false swearing is charged against the defendant. The oath was administered by Josiah Reed, a justice of the peace for Bath county, in the state of Kentucky, with the view of obtaining money from the government. It does not appear that in this law or any other the claim asserted was required to be substantiated by oath; but it was proved that such requirement was made by the secretary of the treasury, whose duty it was to decide on the merits of the claim. Nor does it appear that any authority has been given by any act of congress to a justice of the peace to administer an oath in such a case; and the question arises, whether, admitting the affidavit of Bailey to be false, justice Reed had power to administer such an oath? If it shall be found that no such power existed, the false swearing, though highly immoral, is not an offence under either of the acts of congeess which have been cited.
The statutes of 1823 and 1825 above cited, have extended the crime of perjury, or the punishment annexed to it, to a false swearing; which neither by the common law nor the previous acts of congress, constituted perjury. Beyond this these acts do not go. They do not dispense with any of the essential requisites, beyond what is expressed, to constitute the crime of perjury.
The definition of perjury at common law, as given by Hawkins, is, "a wilful, false oath, &c. in any procedure in a course of justice." This offence may be commited in depositions, affidavits, &c. taken out of a court of justice.
By the act of congress of 1790, it is provided, that "if any person shall wilfully and corruptly commit perjury on his or her oath or affirmation, in any suit, controversy, matter or cause depending in any of the courts of the United States, or in any deposition taken pursuant to the laws of the United States, every person so offending shall suffer, &c. In 4 Black. Com. 136, it is stated, "the law takes no notice of any perjury but such as is committed in some court of justice having power *259 to administer an oath, or before some magistrate or proper officer invested with a similar authority." And lord Coke, in 3 Inst. 165, says, "that no old oath can be altered or new oath raised, without an act of parliament; or any oath administered by any that hath not allowance by the common law, or by act of parliament."
No one can doubt, that an oath administered by a person without authority is a void act. It imposes no legal obligation on the person swearing to state the truth; nor is he punishable under any law for swearing falsely in such a case.
The prosecution in this case is attempted to be sustained on two grounds.
1. From the general language of the law defining the offence of false swearing.
2. From the usage of the treasury department.
And first, as to the language of the act under which this prosecution was commenced. The act is general in its language against "any person who shall swear falsely;" but it gives no authority, either general or special, to administer an oath. This power must be sought in other acts of congress, or in a judicial office to which the power is incident.
The federal government is one of limited and specific powers. In the discharge of its functions, except in certain specified cases, its acts are as distinct from those of a state government, as if they were foreign to each other. The officers of the one government, as such, can do no official acts under the other: the sources of their authority are different, as well as their duties and responsibilities.
When a law for the punishment of offences is passed by either the federal or a state government, it can only operate within the proper jurisdiction. The officers of the federal government can take no cognizance of the penal laws of a state; nor can the judiciary of a state, in my opinion, carry into effect the criminal laws of the union. If this could be done, it would consolidate the jurisdictions of the respective governments, and introduce into our judicial proceedings the utmost confusion. It is not in the power of congress to transfer any part of the jurisdiction which the constitution has vested in the federal government. If this can be done by congress, to any extent, it may be done without limitation; and in this way the powers *260 of the federal government might be lessened or utterly destroyed.
A federal judicial officer, either by act of congress or as an incident to his office, has the power to administer oaths. This power, however, can only be exercised within the jurisdiction of the federal government, and in cases where an oath is required or sanctioned by the laws of that government. And so of the judicial officers of a state. If either officer act beyond the sphere of his appropriate jurisdiction, his act is a nullity.
In this view of the case, there is no difference in principle between administering an oath, and any other act which belongs to the judicial character of the officer.
By an act of congress, depositions may be taken before certain state officers, in any cause pending in the courts of the United States. Among these officers a justice of the peace is not named, unless he be a judge of a county court: and it has been often decided, that a deposition taken before a justice of the peace, who is not a member of a county court, or before any other state officer than those named in the act, cannot be read in evidence.
Under the state jurisdiction, the justice may have power to administer oaths, but he is not recognized as having a right to exercise this power under the act of congress. And would any one contend that a deposition taken before a justice, under such circumstances, could lay the foundation of a prosecution for perjury?
The state officers named in the act, as having the power to take depositions, do not act, in taking them, under their general power to administer oaths as state officers; but under the special authority of the act of congress. Any other persons designated by their official characters, might as well have been named in the act of congress, though they had no power under any law of the state, to administer oaths. The officers named in the act, are referred to as descriptive of persons who may exercise the authority given, and for no other purpose.
In the argument of this case, for the prosecution, a great number of acts of congress were read, granting pensions and for other purposes, in which state officers were specially authorized to administer oaths. This I take to be a conclusive exposition *261 by congress, against the powers of state officers to administer oaths for federal purposes. Would a special authority have been vested in them for this purpose, if, in the opinion of congress, they possessed a general authority under the state laws? But one answer can be made to this inquiry. Congress knew well that state officers could exercise under their general authority, no such power, and it was expressly conferred on them by an act of federal legislation.
If this power to administer an oath by a judicial officer of a state, in matters of a civil nature which relate to the federal jurisdiction, cannot be recognized as legal; much less should it be sanctioned, as laying the foundation of a prosecution for perjury. The false swearing with which the defendant stands charged, though not technically perjury, is punished as such.
Under a general law of a state which defines the offence and provides for the punishment of perjury, would a false oath taken before a federal judicial officer be punishable? Would it not be essential, in such a case, to show that the person administering the oath, acted under the authority of the state? Could the state tribunals recognize any other authority than that which belongs to their own jurisdiction? If no state law authorises an oath to be administered by a federal officer, can he administer it, for state purposes? Could the acknowledgement of a deed or other instrument be made before a federal judge, under a general statute of a state requiring such instrument to be acknowledged before a judge of the court? All these questions must be answered in the negative.
To say that the federal officer has a right to administer oaths by an act of congress, or as an incident of his office, does not remove the objection. Can a judge of the federal court exercise his functions in a state tribunal? Such a pretension would be too absurd to merit serious consideration. And, yet, is there any difference in principle between a federal judicial officer discharging his function in a state tribunal, and administering an oath for state purposes. Does he not, in both cases, exercise the functions of his office under the jurisdiction of the state.
It is admitted that the legislature of a state, as well as congress, may authorise any persons, by name, or by their official designations, to administer oaths in all cases required, under *262 the laws of their respective governments: but I am examining the case of the defendant where no statutory power to administer the oath, is pretended to have been given by congress.
Any official act of a federal officer, under the jurisdiction of a state, which has not authorised such act by him, is extra judicial, and in no point of view legal. Nor can an oath administered under such circumstances, however false, be punishable under a general statute of the state against false swearing. The act of administering the oath, being done without authority, is void. It subjects the false swearer to no greater penalty than if it had been administered by a private citizen, without any pretence of power.
The law, it may be said, denounces the punishment for false swearing generally. And can there be a false swearing, within the meaning of the act, before a person who has no authority to administer an oath?
From these considerations it would seem that no punishment could be inflicted by a state tribunal, under an act against false swearing, where the oath had been administered by a federal officer, whose act was not sanctioned by any law of the state.
And if this be the case under the jurisdiction of a state, is it not equally clear that the same principle applies to the federal jurisdiction? If a state tribunal cannot punish for false swearing, where the oath is administered by a federal officer without any sanction by the laws of the state; can a federal tribunal punish for false swearing, where the oath is administered by a state officer without any sanction by the laws of the union.
The act of congress against false swearing is general, and no reference is made to the authority under which the oath shall be administered: but does it not follow as a consequence, that the oath must be administered under the same jurisdiction which enacted the law? Did congress intend to punish an offence committed before a state tribunal? They had the power to punish false swearing, before any individual whom they might have authorised to administer the oath; but in this law they have not so provided, nor in any other law which relates to the case under consideration. It therefore follows, in this view, that justice Reed, in administering the oath to the *263 defendant, acted without authority, and the affiant cannot be subjected to the penalty for false swearing.
If this offence may be perpetrated before a state officer, because the law denouncing it is general; on the same ground, may not a state tribunal inflict the penalties of this law?
But it is insisted that under the rule of the treasury department which required the oath to substantiate the claim, the justice was authorised to administer the oath.
Can this position be sustained?
It has been shown that justice Reed, in administering the oath, did not act under the authority of the state, or of any law of congress; and the question is fairly presented, whether the secretary of the treasury has the power to invest any individual with a competent authority to administer oaths, in matters which relate to the treasury department.
That the secretary of the treasury, who, in the discharge of his duties, is required to investigate and decide annually, numerous and various claims on the treasury, may require certain claims to be substantiated by oath, is not controverted.
But this admission goes no length in sustaining the prosecution: for it does not follow, if the secretary require an oath in proof of a claim, that he can invest any individual with the power to administer such oath.
In the first place, there is no necessity for the exercise of the power, by the secretary; because there are officers of the United States who are duly authorised to administer oaths. But there is no power in any executive officer to clothe any individual with the important authority of administering oaths. It is a power which belongs to the legislative department, and can no where else be exercised.
In certain cases courts may issue commissions to take depositions, and these give authority to administer oaths in the cases stated; but this is done under the express sanction of law. Can the secretary himself administer an oath which shall lay the foundation of a prosecution for perjury? But it is said that it has been the usage of the department to act on oaths administered by state officers. That such has been the usage I can entertain no doubt; but there is no proof before this court, nor was there any before the circuit court, that such usage exists *264 in cases where congress have given no authority to administer the oath.
But suppose the usage did extend to cases where no authority had been given by congress to a state officer to administer an oath; could usage constitute the law in such a case. The usage of the department may not only fix the rule of decision, but, in many cases, the ground and extent of a claim against the government. But this usage cannot extend beyond the action of the department.
The secretary of the treasury requires oaths to be administered by state officers, in proof of certain claims, to guard the public interest; but does that legalize such a procedure? It may prove salutary for the purpose intended; but does it follow that the oaths administered by any one, if false, are within the act of congress against false swearing? This act is a highly penal one. A conviction under it destroys the character of the individual, and deprives him of his liberty. Like all other criminal acts, it should receive a strict construction, and no person should be subjected to its penalties who has not clearly violated its letter and spirit.
In one sense it may be said, that the defendant, Bailey, is within the law, because the law punishes false swearing; and he has sworn falsely before a justice of the peace. But the question recurs, had this justice the power to administer the oath? If he had not, Bailey has not incurred the penalties of the law.
A decision from 8 East 364, has been read, as applicable to the case now under consideration. That was a case in which the court of king's bench decided that an affidavit taken in a foreign country, was sufficient, under the practice of the court, to hold a defendant to bail. But lord Ellenborough says, that "in none of these cases can the party making a false affidavit be indicted, specifically, for the crime of perjury in the courts of this country; but in all of them, as far as the party is punishable at all, he is punishable for a misdemeanour, in procuring the court to make an order to hold to bail, by means, and upon the credit of a false and fraudulent voucher of a fact, produced and published by him for that purpose."
It appears, from this opinion, that the false swearing in a foreign affidavit could not lay the foundation of a criminal *265 prosecution; but the use which was made of such affidavit, and the effect produced by it  these constitute the gist of the prosecution.
A false affidavit, to hold to bail, if made in England, and before a person competent to administer an oath, would be perjury. But lord Ellenborough says, in substance, if the oath be administered in a foreign country, or in Ireland or Scotland, though false, does not subject the affiant to a prosecution for perjury, nor for any criminal prosecution founded exclusively upon the false swearing.
If, by the practice of the court, a mere statement by the plaintiff were sufficient to hold to bail, and such statement were made falsely, it would subject the plaintiff to punishment by the common law; for, in the language of the judge, "procuring the court to make an order to hold to bail, by means and upon the credit of a false and fraudulent voucher of a fact produced and published by him for that purpose."
This opinion, it appears to me, does not conflict with the view I have taken of this case.
But it is insisted, that the law against false swearing was passed with a knowledge by congress of the usage of the department to require oaths before state officers; and that it must be presumed, they intended to sanction such usage. Is such a presumption admissible in a criminal case? The effect of the law must be limited, in its penalties, to the jurisdiction under which it was enacted; and it should not be construed to embrace cases which do not come legitimately within its purview.
A court, in giving a construction to a highly penal law, will look at its letter and spirit, and cannot extend its provisions by construction, from motives of policy which may be supposed to have influenced the legislature.
If state and federal officers, as such, may exercise their functions within the jurisdiction of either government, to any extent; I see no principle by which their powers shall be limited. Such a course would blend the jurisdictions of the federal and state governments, and be likely to lead to the most serious collisions.
I consider this question as one of great importance, and differing, as I do, from the opinion of the court, I have felt bound to give the reasons for my opinion.
*266 This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Kentucky; and on the point on which the judges of the said circuit court were opposed in opinion, and which was certified to this court for its opinion, agreeably to the act of congress in such case made and provided; and was argued by counsel: on consideration whereof, it is ordered and adjudged by this court, that it be certified to the said circuit court, as the opinion of this court, that the said Josiah Reed, named in the certificate of division, being a justice of the peace of the commonwealth of Kentucky, authorized by the laws of that state to administer oaths, had authority and jurisdiction to administer the oath and take the affidavit in the said certificate of division mentioned, and that if the facts stated therein were falsely sworn to, the case is within the act of congress of the 1st day of March 1823, referred to in the same certificate.
NOTES
[(a)] Act of 28th of February 1793, ch. 61, [17]. Act of 3d March 1803, ch. 90. Act of 10th of April 1806, ch. 25. Act of 18th of March 1818, ch. 18. Act of 1st of May 1820, ch. 51. Act of 3d of March 1823, ch. 187.